UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT S. SLOAT | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:11-CV-1361 (JCH) |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA | : | FEBRUARY 27, 2013 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 32)**

**I.   INTRODUCTION**

Plaintiff Robert S. Sloat ("Sloat") brings this action against defendant Bank of American ("BOA") for claims relating to the freezing—and eventual closing—of Sloat's account after his account posted a fraudulent transaction.  The Complaint (Doc. No. 1) raises eight claims: civil theft, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), violation of the federal laws and regulations governing national banks, negligence, breach of fiduciary duty, conversion, unjust enrichment, and fraud.  Before the court is BOA's Motion for Summary Judgment as to all of Sloat's claims.  However, because BOA only refers to two of the eight claims while briefing its Motion[1]—Sloat's claims for civil theft and violation of CUTPA—the court will construe the Motion for Summary Judgment as one for Partial Summary Judgment.  For the foregoing reasons, BOA's Motion for Partial Summary Judgment is denied.

**II.   STATEMENT OF FACTS**

On or about August 4, 2010, Sloat opened a personal checking account with BOA. Pl. L.R. 56(a)(2) Statement ¶ 1.  By opening the account, Sloat agreed that the

---

[1] BOA never mentions <u>any</u> of the claims in its Motion for Summary Judgment or Memorandum of Law in Support of its Motion.  It mentions the two claims for civil theft and violation of CUTPA for the first time in its Reply to the plaintiff's Memorandum in Opposition (Doc. No. 35).

1

account would be governed by the Deposit Agreement and Disclosures ("Deposit Agreement").[2] Def. L.R. 56(a)(1) St. ¶ 1. On or about April 12, 2011, a customer of Sloat deposited a $4,500 check (check no. 3412) into Sloat's bank account. Id. at ¶ 3. BOA was informed on or about May 10, 2011, by First National Bank of Omaha, that the check was a fraudulent check. Id. at ¶ 4. Pursuant to the Deposit Agreement, BOA froze the account,[3] Def. L.R. 56(a)(1) ¶ 5, and eventually closed it. Pl. L.R. 56(a)(2) ¶ 8.

According to BOA, it was waiting for Sloat to provide documentation related to the fraudulent check transaction before concluding its investigation and providing Sloat his outstanding balance from the account. Def. L.R. 56(a)(1) ¶ 10; Hoskins Poitevien Aff . ¶ 16. Sloat denies this assertion, instead stating that no correspondence from BOA mentioned that it would return the money from Sloat's account. Sloat Aff. ¶ 8. Rather, BOA sent numerous letters to Sloat, which stated that, "we have made the decision that the funds will not be remitted to you." Pl. Mem. in Opp. Mot. Summ. J., Ex. A.

According to BOA, it sent Sloat a cashier's check for the outstanding balance from his account--$29,993.04—in August 2011. Def. L.R. 56(a)(1) ¶ 15. According to Sloat, he never received the cashier's check. Pl. L.R. 56(a)(1) ¶ 16. After Sloat filed this lawsuit, BOA provided Sloat a "declaration of loss" form so that he could obtain a replacement cashier's check. Def. L.R. 56(a)(1) ¶ 17. However, Sloat has not

---

[2] Sloat does not admit or deny in his Rule 56(a)(2) Statement that he agreed that the account would be governed by the Deposit Agreement and Disclosures. As such, the court deems that assertion admitted. See L.R. 56(a)(3).

[3] Sloat denies that BOA could freeze his account by stating that, "[d]efendant's statement implies knowledge by [p]laintiff that [p]laintiff denies because the deposit agreement was never mentioned to [p]laintiff prior to the initiation of the lawsuit." Pl. L.R. 56(a)(2) ¶ 5. However, Sloat does not cite to any evidence to suggest that the Deposit Agreement does not give BOA authorization to freeze an account when it suspects fraudulent activity. Sloat is attempting to argue his case rather than admit or deny the facts. As such, the court considers this statement admitted. See Eiden v. McCarthy, 531 F. Supp. 2d 333, 338 (D. Conn. 2008).

completed the form. Id.

**III.   STANDARD**

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). "[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).

**IV.   DISCUSSION[4]**

A. Civil Theft

Sloat claims that BOA committed civil theft in violation of Section 52-564 of the

---

[4] The defendant has not cited to any case law setting forth the elements of any of the eight claims brought against it by Sloat, nor does it apply its argument—that BOA was rightfully holding the funds until it completed its investigation into fraudulent activity—to the standards required for proving those eight claims. "This failing 'effectively places on the court the burden of conducting the initial legal analysis that is properly the responsibility of defendant's counsel." Wenzhou Wanli Food Co.v. Hop Chong Trading Co., 2000 WL 964944, at * 3 (S.D.N.Y. July 11, 2000) (stating that, under New York's local rule, failure to cite case law supporting a motion for summary judgment is grounds for denying summary judgment); see also Conn. Local Rule 7.1 (failure to submit a memorandum of law may be deemed sufficient cause to deny the motion); L.R. 56(a)(4) (requiring parties to file their Rule 56(a)(1) and (a)(2) statements along with a memorandum of law) (emphasis added). In effect, while filing a pleading called a "memorandum of law," the defendant has failed to file a pleading that qualifies as a memorandum of law because its memorandum does not present the law.

3

Connecticut General Statutes.  According to the statute, "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."  Conn. Gen. Stat. § 52-564.  Statutory theft, under section 52-564, is synonymous with larceny as defined in section 53a-119 of the Connecticut General Statutes.  See Stuart v. Stuart, 996 A.2d 259, 268 (Conn. 2010).  Therefore, under both statutes, a person commits larceny "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."  Id. at 268 n.10.  "An owner is defined, for purposes of [section] 53a–119, as any person who has a right to possession superior to that of a taker, obtainer or withholder."  Desmond v. Yale-New Haven Hospital, Inc., 138 Conn. App. 93, 98 (Conn. App. 2012).  Connecticut courts have clarified that statutory theft is distinguishable from the common law claim of conversion in that, "statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion."  Id.

BOA argues that it never had any intention of keeping Sloat's funds from the closed account and was merely "waiting for information from plaintiff to conclude its investigation and remit plaintiff the funds to his account."  Def. Reply at 4.  However, according to Sloat, he received numerous letters from BOA stating that his account was closed and that BOA "made the decision that the funds will not be remitted to you."  Mem. in Opp. Mot. Summ. J., Ex. A.  BOA argues in its Reply that these letters are mere form letters that "were simply explaining that at the time, BOA would not be remitting funds pursuant to the investigation regarding the fraudulent activity that occurred."  Def. Reply at 4.  However, upon review of the letters, it is difficult for the

4

court to see how anyone could understand from BOA's language that the money was only being held until completion of an investigation. The letters state that, "the above referenced account has been closed. Based on a careful review of the account, we have made the decision that the funds will not be remitted to you." Mem. in Opp. Mot. Summ. J., Ex. A. Furthermore, although BOA claims that it sent a cashier's check to Sloat with the account funds on August 11, 2011, Sloat has introduced evidence that he never received a cashier's check. Therefore, there remains an issue of material fact as to whether BOA sent Sloat a cashier's check in August 2011,[5] and whether BOA intended to remit Sloat's funds to him at the conclusion of its investigation into the fraudulent transaction.

BOA makes much of the fact that it sent Sloat a declaration of loss form, sometime after the initiation of this lawsuit in August, so that Sloat could obtain a replacement check. According to BOA, this is an indication of its good faith effort to provide Sloat with his funds, and that it is only Sloat's refusal to complete the form which has prevented him from accessing his money. However, as Sloat argues, a reasonable jury could determine that BOA never sent a check in August, and only tried to return the funds—by requiring Sloat to complete a form for a fabricated "replacement" check— once Sloat accused BOA in litigation of improperly taking his money. Therefore, based on these genuine issues of material fact, the court denies BOA's Motion for Partial Summary Judgment as to Sloat's claim for civil theft.

B. CUTPA

CUTPA provides that "[n]o person shall engage in unfair methods of competition

---

[5] BOA has introduced an email image of a cashier's check, issued on August 11, 2011, to Robert Sloat. See Hoskins Poitevien Aff., Ex. F. However, evidence that a cashier's check was issued is not evidence that the check was ever sent to Sloat.

and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b.  Sloat has alleged that BOA engaged in both unfair and deceptive acts or practices, Compl. ¶ 37, which are distinct causes of action under Connecticut law, see Independence Ins. Serv. Corp. v. Hartford Life Ins. Co., 2006 WL 860676 at *2 (D. Conn. Mar. 31, 2006) (noting that a deceptive practice is different from an unfair practice).

BOA does not explain, by citing to case law setting forth the standard for proving a CUTPA claim, why its actions were neither unfair nor deceptive as a matter of law.  It merely states—for the first time in its Reply brief—that Sloat cannot prove a CUTPA claim because BOA's actions were in accordance with the Deposit Agreement.  Def. Reply at 4.  However, as discussed above, see supra, pp. 4-5, there are genuine issues of material fact as to whether (1) BOA sent Sloat the outstanding balance from his closed account in August 2011 and, (2) BOA intended to provide Sloat with his funds prior to the initiation of this lawsuit.  BOA has not presented any authority to suggest that the withholding of Sloat's funds cannot constitute an unfair or deceptive act under CUTPA.  As such, the court denies BOA's Motion for Partial Summary Judgment as to Sloat's CUTPA claim.

**V.    CONCLUSION**

For the foregoing reasons, BOA's Motion for Partial Summary Judgment as to Sloat's claims for civil theft and violation of CUTPA (Doc. No. 32) are **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 27th day of February, 2013.

                                         /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge