United State District Court
District of Connecticut

ROBERT S. SLOAT

    Plaintiff,

v.

BANK OF AMERICA

    Defendant.

CASE NO. 3:11CV 1361(JCH)

May 6, 2013

FILED 2013 MAY -6 P 1:47 U.S. DISTRICT COURT BRIDGEPORT, CONN

## MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

Robert Sloat, pro se plaintiff, offers this memorandum of law in opposition to the defendant's motion to strike plaintiff's jury demand. The defendant asks the court to enforce a jury waiver buried on the 44th page of an unsigned document the plaintiff was not shown when opening his account at defendant's bank. Because he was reasonably unaware of the provision, could not anticipate being required to waive his Constitutional rights on opening a bank account and did not intend to waive them, the plaintiff argues the jury waiver is not valid. Another question before the court in this proceeding is whether the defendant committed fraud in its dealings with the plaintiff. Such fraud would void the waiver. Thus, he opposes the motion to strike his jury demand

An evidentiary hearing to clarify the plaintiff's intent is appropriate as he has presented evidence showing a lack of intent to be bound while the defendant has not shown that they provided him with enough information to form a clear intent to be bound.

## Background

On or about August 4, 2010, the Plaintiff Robert Sloat went to Defendant Bank of America's branch office in Westport to open a deposit account into which he and his associates could deposit funds for his business and personal use. The defendant's employee told the plaintiff that personal accounts had a lower fee structure and did not mention any restrictions on using personal accounts partially for business purposes. Plaintiff's 9/20/12 Affidavit (P. Aff.), para. 2. The plaintiff advised the defendant that third parties would be making deposits into the account. *Id.*

To open his personal account, the plaintiff signed a Personal Signature Card (PSC), which does not mention a waiver of the right to a jury trial. The PSC contains a fine print provision referencing three documents: a Deposit Agreement and Disclosures (DA), the Personal Schedule of Fees and the Miscellaneous Fees for Personal Accounts. Defendant's Motion to Strike, Exhibit A. The PSC also contains, also in miniscule font, a printed acknowledgement of receipt of these forms; however, the defendant has not offered any evidence that its employee actually provided the documents to the plaintiff. Nor has it offered evidence showing that its employee explained the terms and conditions contained in those documents to the plaintiff. The plaintiff never signed the DA or any of the other referenced forms. See P. Memo. Opposing D. Mtn. for Sum. J,. Exh. B. for complete copies of the DA and PSC. The PSC is not signed by the defendant. See D. Mtn. to Strike, Exh. A.

In May of 2011, the defendant materially breached the DA by refusing to remit uncontested funds to the plaintiff at the conclusion of a fraud investigation. The defendant froze all funds in the plaintiff's account on May 10, 2011. See Def. L.R. 56(a)(1) Statement, para. 5 and 8/28/12 Affidavit of Donna Hoskins Poitevien (HP Aug. Aff.), Paragraph 8. The defendant notified the plaintiff on May 11, 2011 that it suspected a $4,500 check deposited into the account on April 12, 2011 by an as yet unidentified third party was fraudulent. The defendant also told the plaintiff at that time that the account had been closed[1]. HP Aug Aff., para 12. The defendant never provided additional explanatory information to the plaintiff regarding the alleged fraud. Instead, the defendant claims that it expected the defendant to provide additional information to support their investigation, all while denying access to his non-contested funds despite having closed the account. See HP Aug. Aff., paras. 12 to 16.

During the period when the defendant claims that it "had been waiting for plaintiff's production of documents" to conclude its investigation, (Poitevien Affidavit, para 16), the defendant mailed the plaintiff three letters refusing to return and of his money, stating in two of those letters, unequivocally, "[b]ased on

---

[1] The defendant claims that they closed the account because it was a personal account being used for personal purposes. See HP Aug. Aff., para. 11 & 12. No section of the DA prohibits the use of a personal account for business purposes. A section entitled "Converting an Account," on p. 31 of 45, includes the language "We may convert your account to another type of account, revoke privileges or close your account: - if you mafe frequent transactions on a savings account; - if your account frequently has debits against uncollected funds; - if your account has excessive deposit activity; - if you use a personal account for business purposes; or – when we consider it appropriate or necessary to do so." This is weak authority for the action taken by the defendant at the early stage of the investigation.

a careful review of the account, we have made the decision that the funds will not be remitted to you.[2]" See Pl. Mem. in Opp. Mot. Summ. J., Ex. A. See also October 4, 2012 Affidavit of Donna Hoskins Poitevien (HP Oct. Aff.), paras. 6 and 7. In August, in response to correspondence from the plaintiff regarding the funds the defendant had stolen from him, the defendant alleges that they issued a check for $29,993.04[3] to the plaintiff, though it was never received by the plaintiff. See P. Aff., para. 12. As the defendant is aware of this and refuses to unconditionally release the plaintiff's funds, his money still has not been returned as of May 6, 2013. P. Aff. Para. 14.

## LEGAL STANDARD

The plaintiff has state and federal constitutional rights to have his claim heard by a jury of his peers. U.S. Const., 7 Am., Conn. Const., Art. 1, Sec. 19. Nevertheless, contractual jury trial waivers are enforceable in Connecticut. *L&R Realty v. Connecticut Nat'l Bank*, 246 Conn. 1, 8, 715 A.2d 748 (1998). In Second Circuit litigation applying Connecticut substantive law, "[t]he party seeking to enforce such a waiver bears the burden of showing that it was both knowing and voluntary." *Sherman Street Associates, LLC et al v. JTH, Inc. et al*, 2010 U.S. Dist (CT) LEXIS 29402, *4-5, citing to *Nat'l Equip. Rental, Ltd. v.*

---

[2] Defendant has not pointed to any language in the DA supporting its action in the three letters refusing to return uncontested money to the plaintiff.
[3] This amount includes the allegedly fraudulent $4,500, which was never removed from plaintiff's account. Until recently, all parties seem to have believed that the $29,993.04 did not include funds from the allegedly fraudulent check; however, the plaintiff's review of relevant bank statement in preparing this memorandum reveals that the funds were not debited from his account, casting doubts on all the defendant's claims of fraud. See P. Mem. Opp. Sum. J., Exh. B.

*Hendrix*, 565 F.2d 255 (2d Cir. 1977). Thus, "[t]he defendants may prevail on their motion to strike the plaintiff's jury trial demand by showing that the plaintiff evinced a clear intent to waive any jury trial rights." *Id.*, at *6.

In *L&R Realty v. Connecticut Nat'l. Bank*, the Connecticut Supreme Court outlined factors to be considered in determining whether a party intended to waive the right to a jury trial:

> "(1) the conspicuousness of the waiver clause, including (a) its location relative to the signatures of the parties, (b) whether it was buried in the middle of a lengthy agreement, and (c) whether it was printed in a different typeface or font size than the remainder of the contract; (2) whether there was a substantial disparity in bargaining power between the parties to the agreement; (3) whether the party seeking to avoid enforcement was represented by counsel; (4) whether the opposing party had an opportunity to negotiate the terms of the agreement; and (5) whether the opposing party had been fraudulently induced into agreeing specifically to the jury trial waiver."

*L&R Realty v. Connecticut Nat'l. Bank*, 246 Conn. 1, at 15.

The "general rule" that notice of a contract will be imputed to a mature person who "signs or accepts a formal written contract affecting his pecuniary interests" is qualified by the "intervention of fraud or artifice." *First Charter Nat'l Bank v. Ross*, 29 Conn.App. 667, 671 (1992), appeal dismissed, 228 Conn. 203, 635 A.2d 796 (1994)(certification improvidently granted) citing to *Ursini v. Goldman*, 118 Conn. 554, 562, 173 A. 789 (1934). Further, the general rule "applies only if nothing has been said or done to mislead the person sought to be charged or to put a [person] of reasonable business prudence off . . . guard in the matter." *Id.*

**DISCUSSION**

The plaintiff did not waive his right to a jury trial because he never intended to waive that right and had no knowledge of any waiver when he opened his account at defendant's bank. While under some circumstances a sophisticated consumer may be bound whether he read a document or not, the plaintiff could not have anticipated the DA would require a waiver of Constitutional rights in order to open a deposit account at the defendant's bank. If the court does determine that the plaintiff agreed to waive his Constitutional right to a jury trial, the defendant's motion to strike should be denied because the defendant should be estopped from invoking the protection of the contract after its material breach of it terms by theft and fraud.

Analysis of the *L&R Realty* factors makes clear that the defendant cannot meet its burden to show that the plaintiff had enough information to form the clear intent to waive his jury trial right. The defendant has not presented evidence that it gave the plaintiff a copy of the document prior to signing the PSC. Without providing the plaintiff with the document and giving him the opportunity to examine its terms, the defendant cannot show that the plaintiff formed the necessary clear intent.

As to conspicuousness and location, the jury trial waiver is not contained in any writing signed by the plaintiff. Instead, the waiver is buried on page 44 of a 45 page pamphlet. A very small font is used throughout and, though the waiver provision is in bold, capital print, its location creates the impression that it is so places as to discourage customers from actually reading it. In the present instance, the defendant's employee was certainly aware that the plaintiff had not

in fact read the document and did nothing to make the plaintiff aware of its provisions.

While the plaintiff here had money ready to deposit in the defendant's bank, he did not have any power to bargain as to the terms of a deposit account. The defendant has not provided any evidence showing that it is open to negotiation regarding such agreements or that it considers any alteration of their standard terms. At the time an account is opened, the plaintiff remains free to take his business elsewhere; however, if he is not advised of the term until some time later, plaintiff's bargaining power at the time he does become aware of the objectionable term is much diminished by the defendant's possession of his money. The difficulty of closing one account and starting another elsewhere increases the power of the defendant to perpetuate the relationship despite delayed disclosure of terms unfavorable to the him.

When the plaintiff brought his money to the defendant's bank, he was not represented by counsel and in fact he remains unrepresented in this litigation. On the other hand, the defendant clearly utilized significant legal assistance in preparing the DA, which would require a team of lawyers to decipher.

In short, the defendant asks the courts permission to follow a business model of blindsiding your customers with claims of fraud, taking their money, failing to substantiate any basis for the claim even as part of legal discovery in Federal Court, and then hiding behind a strictly one-sided contract which was tainted the moment it was allegedly formed.

Connecticut cases cite the various *L&R Realty* factors and frequently place great emphasis on the factors where the defendant was most deficient. In rejecting a jury trial waiver allegedly added to an existing contract, the court said that placing the waiver on page twenty-three of a thirty-nine page agreement meant that the language "is buried in the middle of a rather lengthy document. It should further be noted that the plaintiff never signed this document and our Supreme Court has deemed this an important consideration." *Roger Kaye, M.D., P.C. v. T.D. Banknorth, N.A.*, Conn. Super. LEXIS 555, *16, Docket # FSTCV085007268S, (Stamford 2011). There, an evidentiary hearing was held but "the defendant's evidence fails to establish that the plaintiff received" the agreements. *Id.*, *17.

In *Groth Family Ltd. Partnership v. T.D. Bank, N.A.*, the court integrated separate documents into a single agreement and upheld the waivers, but there, the parties to be charged "clearly signed the Security Agreement which contained the jury waiver. *Groth Family Ltd. Partnership v. T.D. Bank, N.A.*, 2011 Conn. Super. LEXIS 2975, *10, Docket # CV106001813S (Middletown).

In *Centerbank v. Phillip Fazzone*, 1995 Conn. Super. LEXIS 2929, Docket #CV940066746 (Litchfield), defendants admitted that they had not read the documents containing the jury waiver. The court voided the waivers, observing that, despite being close to the signatures, "it is clear from the testimony of the defendants that they did not know of the waiver clause." *Centerbank v Fazzone*, 1995 Conn. Super. LEXIS 2929, *5, Docket #CV940066746 (Litchfield). Citing to

another non-reported case,[4] the court there observed that "[t]he mere inclusion of a waiver provision in a document does not in and of itself automatically in all instances constitute a binding waiver by the party against whom waiver is claimed." *Id.*

The defendant bank has not met its burden to show that the plaintiff intended to be bound by the jury waiver buried on page 44 of the DA. It has not even attempted to show when or how the DA was delivered to the plaintiff or that he was made aware of its contents. The defendant has continuously obstructed the plaintiff's efforts to obtain information about the alleged fraud, to the point where it is impossible to believe that there ever was a fraudulent check since the bank claims to have returned the contested funds to the plaintiff. Seeking to deny the plaintiff his Constitutional rights based one thirty five words buried in a forty five page document not shown to the plaintiff at the time of contract formation is not consistent with the law of Connecticut.

Further and finally, Count Nine of the complaint in this action alleges fraud on the part of the defendant. Based on the obstruction and refusal to provide information, it is impossible for the plaintiff or the court to determine when the defendant's fraudulent activity began and the plaintiff deserves an opportunity to show a jury of his peers that the entire relationship was based on fraud. Such fraud would void the jury waiver under previously cited Connecticut precedent.

---

[4] *Connecticut National Bank v. Swanney Toyota*, 1993 Conn. Super. LEXIS 1508 (New Britain).

## CERTICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Opposition to the Defendant's Motion to Strike Plaintiff's Jury Demand was hand delivered to the court. Copies of the foregoing were sent by email and U.S. first-class mail on May 6, 2013 to counsel of record for the defendant as follows:

Christopher S. Antoci, Esq.
Wilson, Elser, Moskowitz, Edelman and Dicker LLP
1010 Washington Boulevard
Stamford, CT 06901

Robert S. Sloat, Pro Se Plaintiff